Arnold G. Fraiman, J.
Plaintiff, a resident of Kentucky and an employee of the Disney Tire & Rubber Company (Disney) of Louisville, Kentucky, commenced this action in New York on August 20, 1965 against Dunlop Tire & Rubber Corporation (Dunlop), a New York corporation. The complaint contains two causes of action, one for negligence and the other for breach of warranty. It alleges that plaintiff sustained injuries on December 26, 1963 in Kentucky when a tire he was mounting on a car in the course of his employment exploded. The tire had been manufactured by Dunlop in its Buffalo, New York plant and sold by Dunlop to Disney pursuant to a written agreement dated March 15,1962 which provided that Disney’s orders for tire products manufactured by Dunlop would be delivered by it “ F.O.B. Buffalo, New York.”
By this motion, plaintiff seeks to dismiss defendant’s first affirmative defense wherein it is alleged that this action is barred by the Statute of Limitations of Kentucky, which defendant claims is one year for negligence and breach of warranty actions. (Kentucky Rev. Stat., § 413.140.) Relying on this same affirmative defense, defendant cross-moves for summary judgment dismissing the complaint.
It is clear that if, as plaintiff claims, either the three-year New York Statute of Limitations for personal injuries (CPLR 214) or the six-year New York Statute of Limitations on actions for breach of warranty (CPLR 213, subd. 2)[1] apply, rather than the Kentucky statute, that the complaint herein is not time-barred. Defendant, however, urges that the action of the nonresident plaintiff is based upon causes of action “ accruing without the state ” and that it is therefore entitled to the shorter of the New York or Kentucky Statute of Limitations under CPLR 202 (the so-called 11 borrowing ” statute).
The key question, therefore, is whether* plaintiff’s cause of action for negligence and/or breach of warranty “ accrued without the state ”.
The Court of Appeals has held in a product liability case founded on claims of negligence as well as breach of warranty, *731 that for the purposes of CPLR 302 (which permits jurisdiction over a foreign corporation if it transacts any business or “ commits a tortious act within the state ”), the “ tortious act ” occurs in the manufacturing process at the place of manufacture, rather than where the injury occurs. (Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443.) In so holding, the court said: “ The tortious act charged against the appellant — that it improperly designed and assembled the tank — indisputably occurred in the out-of-state manufacturing process in Kansas.” (p. 459).
“ The mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording.” (p. 460).
■ Here, the tire was manufactured in New York, and the injury occurred in Kentucky. Although the court in the Longines-Wittnauer case (supra) was interpreting New York’s long-arm statute rather than the borrowing statute with which we are here concerned, the rationale there employed is equally applicable to the instant case. Thus, the tire having been manufactured in New York, that is where the cause of action accrued, rather than in Kentucky, where the plaintiff was injured. Accordingly, plaintiff’s cause of action sounding in negligence is governed by CPLR 214, and is not time-barred.
With respect to the action for breach of warranty, it has been held that a breach of warranty action accrues at the time the sale is consummated, that is, when title passes. (Mendel v. Pittsburgh Plate Glass Co., 25 N Y 2d 340.) The time when title passes from the seller to the buyer also determines the place where the sale is consummated. In Standard Casing Co. v. California Casing Co. (233 N. Y. 413, 416), Casdozo, J., stated the general rule “ that upon a sale ‘ f.o.b. the point of shipment,’ title passes from the seller at the moment of delivery to the carrier, and the subject of the sale is thereafter at the buyer’s risk [citing cases]. The operation of the rule is, of course, subordinate to intention.”[2] The court concluded (p. 418) that, “ the seller’s performance would be complete upon the beginning of the transit * * * The undertaking was merely that [the goods] would be delivered to the carrier. The place where that was to be done, as it would be the place of final performance *732 by the seller if the contract had been kept, must be the place also of default when performance was refused.” (See, also, Rosenberg Bros. & Co. v. Buffum Co., 234 N. Y. 338; Chase Manhattan Bank v. Nissho Pacific Corp., 22 A D 2d 215, affd. 16 N Y 2d 999; Personal Property Law, § 100, rule 4 [in effect at the time of the events in this case, repealed Sept. 27, 1964 upon the enactment of the Uniform Commercial Code by L. 1962, ch. 553])[3]. Accordingly, the sale of the new tire which allegedly caused plaintiff’s injuries was consummated in Buffalo, New York, at the time of delivery to the point of shipment “ F.O.B. Buffalo ’ ’. The cause of action based on breach of warranty thus having accrued in New York, the “ borrowing statute ” is inapplicable and the six-year limitation of CPLR 213 (subd. 2) applies. (Mendel v. Pittsburgh Plate Glass Co., 25 N Y 2d 340, supra.)
The defendant, in urging that the Kentucky Statute of Limitations is applicable, relies exclusively upon Fullmer v. Sloan’s Sporting Goods Co. (277 F. Supp. 995). The court does not agree with the conclusion reached in that case, and in any event, it is distinguishable. In Fullmer, plaintiff, a citizen of Idaho, commenced a diversity action in the Federal court in New York against a New York corporation for negligence and breach of warranty, for injuries sustained when shells and ammunition distributed by defendant through national advertising exploded in his face in Idaho. The ammunition, shipped by defendant F.O.B. New York, had been purchased through mail order by Norton, a resident of Idaho, and in turn sold by Norton to plaintiff. Not only was there an intervening sale in Idaho but there is no indication in the opinion that the defendant was the manufacturer. In determining that the Idaho Statute of Limitations was applicable to both causes of action under New York’s borrowing statute, the court, after stating that the policy of the statute was to afford a New York resident-defendant the shortest applicable period of limitations, looked at the Idaho long arm statute which is similar to that of New York. It first found that defendant was subject to the jurisdiction of the Idaho courts *733 because it had advertised its products in that State, a fact not present in the instant case. It then held that Idaho would also have had jurisdiction under the long arm statute on the ground that (p. 997) “ the tortious act was committed in Idaho where the ammunition allegedly exploded in plaintiff’s face.” The expressed basis for this conclusion was B. B. P. Assn. v. Cessna Aircraft Co. (91 Idaho 259). This rule, as the Federal district court itself noted in Fullmer, is “ contrary to the New York rule ”, as set forth in the Longines-Wittnauer case (15 N Y 2d 443, supra) and this court finds Longines-Wittnauer controlling here.
Having concluded that New York’s “ borrowing statute ” has no application because both the negligence and the breach ofi warranty causes of action accrued in New York, we need not reach the further questions raised by the parties concerning the Kentucky Statutes of Limitations.
Plaintiff’s motion to dismiss defendant’s affirmative defense is granted and defendant’s cross motion for summary judgment dismissing the complaint is denied.

. New York’s Uniform Commercial Code (L. 1962, oh. 553) did not become effective until September 27, 1964, subsequent to all of the pertinent events, so that the provisions of the four-year Statute of Limitations for breach of any contract for sale (Uniform Commercial Code, § 2 — 725) are inapplicable.

. In the stipulation of facts upon which these motions were submitted, it was agreed that a representative of Dunlop would testify that the actual terms and accepted method of delivery by Dunlop was “ pre-pay and add ”, which in this court’s opinion does not constitute an intention to deviate from the general rule.

. See, also, Uniform Commercial Code, § 2-401, subd. 2, which replaced and is not inconsistent with subdivision 2 of rule 4, and, while not in effect in New York until Sept. 27, 1964, is instructive in its clarity: “ (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to physical delivery of the goods * * *
“ (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment”. (Emphasis added).